UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE<br>JAMES GERALD FISHER,<br>    Debtor. | Bankruptcy No. 09-B-24649 |
| JAMES G. FISHER,<br>    Plaintiff,<br>v.<br>ILLINOIS DEPARTMENT OF PUBLIC AID,<br>CHILD SUPPORT DIVISION, and IMOGENE HARRIS,<br>    Defendants. | Adversary No. 09-A-00982 |
| JAMES G. FISHER,<br>    Plaintiff,<br>v.<br>ILLINOIS DEPARTMENT OF PUBLIC AID,<br>CHILD SUPPORT DIVISION, and SENOVIA FISHER,<br>    Defendants. | Adversary No. 09-A-00983 |
| JAMES G. FISHER,<br>    Plaintiff,<br>v.<br>ILLINOIS DEPARTMENT OF PUBLIC AID,<br>CHILD SUPPORT DIVISION, WYOMING DEPARTMENT OF FAMILY SERVICES,<br>CAMANDA MILLER, and JAMES A. FISHER,<br>    Defendants. | Adversary No. 09-A-00984 |

**MEMORANDUM OPINION ON MOTIONS BY THE
STATE OF ILLINOIS FOR SUMMARY JUDGMENT**

James G. Fisher ("Plaintiff") filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code. He then filed three Adversary proceedings seeking a ruling that child support debts he allegedly owed to Imogene Harris (No. 09-A-00982), to Senovia Fisher (No. 09-A-00983), and to Camanda Miller (No. 09-A-00984), are dischargeable. The complaints in each proceeding also seek discharge of debts owed to the Illinois Department of Healthcare and

Family Services ("IDHFS")[1] and the Wyoming Department of Family Services ("WDFS") relating to Fisher's possible child support obligations, as well as the correction of assertedly erroneous information that IDHFS and WDFS provided to credit reporting agencies.

Fisher did not file a proof of service of summons with respect to any of the defendants, and the time for service of summons as allowed under Rule 7004(e) Fed. R. Bankr. P. expired on October 23, 2009. The only defendant that made any appearance in these Adversary proceedings is the State of Illinois. Since the other defendants were not served with summons, *in personam* jurisdiction is lacking over them, and they would normally be dismissed except that the case is best disposed of on subject-matter jurisdiction grounds.

The State of Illinois, through its agency IDHFS, moved for Summary Judgment in each proceeding, arguing that jurisdiction does not lie to consider these matters both because of state sovereign immunity and under the *Rooker-Feldman* doctrine. Those assertions are properly considered under Rule 12(b)(1) Fed. R. Civ. P. [Rule 7012(b) Fed. R. Bankr. P.], which permits motions to dismiss "for lack of subject matter jurisdiction."

The State also argues that child support obligations are not dischargeable in bankruptcy, and that any issues with respect thereto should be decided in pending state court proceedings. That argument is properly considered under Rule 56 Fed. R. Civ. P. [Rule 7056 Fed. R. Bankr. P.]. Summary judgment is appropriate where the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[1] Fisher named the Illinois Department of Public Aid as a defendant in his Adversary proceedings. However, IDHFS is the successor to that agency. "IDHFS" will be used for all references herein to either agency.

Moreover, federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010) (*citing Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). In this case, therefore, it is necessary to determine whether subject-matter jurisdiction lies to consider Fisher's claims against Imogene Harris, Senovia Fisher, Camanda Miller, WDFS, and James A. Fisher, even though those parties have not appeared or raised the issue.

For reasons stated below, it is held that jurisdiction does not lie to consider any of Fisher's claims in these Adversary proceedings.

## UNDISPUTED FACTS

The following facts are undisputed, in that they are based on matters and facts established by the State's Motions and not rebutted by Plaintiff.

### Child Support Due to Senovia Fisher

1. On May 13, 1996, the Circuit Court of Cook County, Illinois, entered a Judgment of Dissolution of Marriage requiring that Plaintiff pay child support to Senovia Fisher in the amount of $395.44 per month. On November 16, 2004, the Circuit Court modified Plaintiff's obligation, requiring him to pay $67.45 per week.

2. On November 5, 2007, the Circuit Court found that, as of September 25, 2007, Plaintiff owed back support in the amount of $17,724.69 to Senovia Fisher and $12,654.08 to IDHFS for unreimbursed assistance.

### Child Support Due to Imogene Harris

3. On March 20, 2003, the Circuit Court of Cook County, Illinois, entered a Uniform Order for Support requiring that Plaintiff pay child support to Imogene Harris in the amount of $267.00 per month, plus an additional $53.40 per month on an arrearage of $534.00. On

January 21, 2005, the Circuit Court modified Plaintiff's obligation, requiring him to pay $61.00 per week.

4. On June 8, 2006, the Circuit Court found Plaintiff to be in contempt of court for failure to pay child support due to Harris.

### Child Support Due to Camanda Miller from Another Person

5. On January 28, 1998, the State of North Dakota sent a Child Support Enforcement Transmittal to IDHFS requesting that IDHFS collect child support from an Illinois resident named James A. Fisher for two children he fathered with a North Dakota resident named Camanda Miller. The Transmittal included two Social Security numbers, one belonging to a person named James *A.* Fisher (who is not the Plaintiff) and the other belonging to Plaintiff.

6. At first, IDHFS erroneously attempted to collect child support from Plaintiff for the children of James A. Fisher, first on behalf of the State of North Dakota and later on behalf of the State of Wyoming when Camanda Miller became a Wyoming resident. However, on June 5, 2002, IDHFS mailed a letter to Plaintiff notifying him that the error had been corrected and that the State would not be seeking collection from him with regard to the James A. Fisher case or children. On June 8, 2002, IDHFS corrected the error in its internal records. On November 27, 2002, the Circuit Court of Morgan County, Illinois, entered a Uniform Order for Support against James A. Fisher, but not against Plaintiff.

## DISCUSSION

### I. Jurisdiction Does Not Lie to Consider Any of Fisher's Claims

The State of Illinois advances two arguments that jurisdiction does not lie to consider Fisher's claims. The State's argument that state sovereign immunity deprives the bankruptcy court of jurisdiction is without merit. However, the State's second argument—that under the *Rooker-Feldman* doctrine, the bankruptcy court lacks subject-matter jurisdiction over Fisher's claims—is meritorious. In addition, subject-matter jurisdiction does not lie to consider the claim by Fisher that seeks to compel the Illinois and Wyoming to correct allegedly erroneous credit report information, and the claims against Camanda Miller and James A. Fisher are moot.

#### A. State sovereign immunity does not apply as to Fisher's requests to have his debts declared dischargeable, but those debts are nondischargeable.

"At least when the bankruptcy court's jurisdiction over the *res* is unquestioned, . . . the exercise of its *in rem* jurisdiction to discharge a debt does not infringe state sovereignty." *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 448 (2004) (citations omitted). A debtor-plaintiff who seeks discharge of a child support debt or recovery of a fund wrongfully held by a state can be distinguished from a debtor-plaintiff who seeks affirmative relief from a state in the form of monetary damages. *See id.* at 450; *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 38 (1992) (bankruptcy court lacked *in rem* jurisdiction where debtor sought monetary damages rather than recovery of "particular dollars"). Fisher seeks only a discharge of his debt for child support; he does not seek damages against the State. Therefore, the exercise of jurisdiction in this case would not infringe state sovereignty. However, child support obligations once established are nondischargeable in bankruptcy, 11 U.S.C. § 523(a)(5).

**B. Under the *Rooker-Feldman* doctrine, subject-matter jurisdiction does not lie to hear Fisher's child support claims because he seeks review and rejection of final state-court judgments.**

Under the *Rooker-Feldman* doctrine, lower federal courts lack subject-matter jurisdiction to review final state-court judgments. *Lance v. Dennis*, 546 U.S. 459, 463 (2006); *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The basis for the *Rooker-Feldman* doctrine is the vesting in 28 U.S.C. § 1257 of the sole authority to review state-court judgments in the Supreme Court of the United States. *Exxon Mobil*, 544 U.S. at 291–92. Because Congress granted the Supreme Court this exclusive authority, the lower federal courts necessarily lack any jurisdiction to hear such cases. *Id.* Instead, litigants must appeal to the highest state court and then to the United States Supreme Court. *See id.*

The *Rooker-Feldman* doctrine should be applied narrowly, and not as "a wide-reaching bar on the jurisdiction of lower federal courts." *Lance*, 546 U.S. at 464. Thus, a suit in federal trial court is precluded only when the injury complained of "resulted from, or is inextricably intertwined with" the final state-court judgment. *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008). If, however, the federal case involves a claim that is independent of the state-court judgment, then *Rooker-Feldman* is inapplicable. *Exxon Mobil*, 544 U.S. at 293.

In this case, subject-matter jurisdiction does not lie to consider Fisher's wish to contest the child support claims if the Illinois child support judgments were final and if Fisher's asserted injury resulted from those judgments.

### *1. The Illinois child support judgments were final judgments because they finally disposed of the rights of the parties.*

An Illinois child support order is final when it "finally disposes of the rights of the parties, either on the entire controversy or a separate branch thereof." *Deckard v. Joiner*, 255 N.E.2d 900, 902 (Ill. 1970). It follows that an order for child support is final even when it leaves for future determination matters ancillary or incidental to the ultimate rights adjudicated by the judgment. *See Franson ex rel. Franson v. Micelli*, 666 N.E.2d 1188, 1190 (Ill. 1996). Such future ancillary matters include enforcement of the order and a possible increase in the amount of support based on a subsequent change in circumstances. *Id.* If, however, a support order reserves matters of substantial controversy for future consideration, then the order is not final. *Id.* (support order not final where court deferred ruling on issues of medical insurance and retroactive payments); *see also In re Marriage of Mitchell*, 692 N.E.2d 281, 283 (Ill. 1998) (holding that 750 Ill. Comp. Stat. 5/505(a)(5) requires that final support order state the obligation as a dollar amount); and *Dep't of Pub. Aid ex rel. Corrigan v. Hawkins*, 543 N.E.2d 317, 320 (Ill. App. Ct. 1989) (support order not final where court reserved ruling on reimbursement of medical expenses). *But see Watkins v. Martin*, 450 N.E.2d 866, 868 (Ill. App. Ct. 1983) (support order final even though court reserved ruling on issues of pregnancy expenses and attorney fees).

The support order directing Plaintiff to remit payments to Imogene Harris specified the exact amounts due. That order did not reserve issues for future consideration, and it expressly withdrew the issue of medical insurance. Similarly, the judgment of dissolution of marriage directing Plaintiff to remit certain support payments to Senovia Fisher specified the exact

amounts due. That order also did not reserve issues for future consideration, and it expressly addressed the issues of medical and life insurance. Therefore, both support orders were final under Illinois law.

### 2. *The injuries Plaintiff complains of resulted from the final Illinois child support judgments.*

Fisher seeks review of the merits of the foregoing two final state-court determinations. In one Adversary Complaint (No. 09-A-00982), he alleges that Imogene Harris did not meet the criteria for child support because she was not the custodial parent at the relevant times, and so her claim should be discharged. In another Adversary Complaint (No. 09-A-00983), he alleges that part of his child support obligation to Senovia Fisher should be discharged because it is "not statutory." These claims are not independent of the two state-court final orders, and the *Rooker-Feldman* doctrine therefore bars the review he seeks here. *See In re Chinin USA, Inc.*, 327 B.R. 325 (Bankr. N.D. Ill. 2005) (distinguishing a determination of the merits of a debt action from a determination of the dischargeability of debt under the Bankruptcy Code). Therefore, his claims against IDHFS, Imogene Harris, and Senovia Fisher seeking to overturn those child support orders will be dismissed for lack of jurisdiction by separate order.

### C. Jurisdiction does not lie to consider Fisher's credit reporting claim because the claim does not arise in or under the Bankruptcy Code and is not related to Fisher's bankruptcy case.

Plaintiff seeks in the remaining Adversary Complaint (No. 09-A-00984) to establish that he owes nothing to Camanda Miller and to compel the State to correct allegedly erroneous information sent to credit reporting agencies because of its confusion over a similarly named child support obligor. The State has conceded its error in that regard by letter to him and on the record herein. However, the wrong asserted—defamation of credit—does not arise in or under the Bankruptcy Code nor does it arise under related jurisdiction. Jurisdiction therefore does not

lie here to hear this claim. *See In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987) ("related to" jurisdiction exists only when dispute affects amount of property available for distribution or allocation of property among creditors). Fisher's claim seeking to compel the States of Illinois and Wyoming to correct credit report information will therefore be dismissed for want of jurisdiction by separate order. However, Fisher may take comfort from the fact that he may bring the State's admissions, both by letter and in its briefs herein, and the findings of undisputed facts repeated in this opinion directly to the credit reporting agencies or to a nonbankruptcy court capable of hearing a claim for damages if he seeks to pursue the matter.

## II. Fisher's Claims Against Camanda Miller and James A. Fisher Are Moot and No Case or Controversy Is Justiciable Under the Constitution

Subject-matter jurisdiction does not lie to consider Fisher's claims against Camanda Miller and James A. Fisher because those claims are moot. The State has corrected its error and child support payments are no longer being sought from Plaintiff with respect to the James A. Fisher case or children. The State and Camanda Miller are highly unlikely to make any claim against Plaintiff. Therefore, Plaintiff's claims against these two defendants are moot and do not present a case or controversy as required under the Constitution. U.S. Const. art. III, § 2. Those claims will therefore be dismissed for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, separate Orders will be entered granting the Motions by the State of Illinois for Summary Judgment in Adversary proceedings Nos. 09-A-00982, 09-A-00983, and 09-A-00984, by dismissing all these Adversaries for lack of jurisdiction.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this _____ day of April, 2010.